**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Edward Charles CARTER,**
**Defendant–Appellant.**

**No. 97–50620.**

United States Court of Appeals,
Ninth Circuit.

Submitted Oct. 9, 1998.*

Decided Oct. 21, 1998.

---

* The panel finds this case appropriate for submission without argument pursuant to Fed. R.App. P. 34(a) and Ninth Circuit Rule 34–4.

Korey House, Deputy Federal Public Defender, Los Angeles, California, for defendant-appellant.

Susan L. Barna, Assistant United States Attorney, Los Angeles, California, for plaintiff-appellee.

Before: PREGERSON, D.W. NELSON, and THOMAS, Circuit Judges.

PREGERSON, Circuit Judge:

Edward Charles Carter appeals the conditions of his supervised release imposed by the district court. On November 24, 1997, the court sentenced Carter to 70 months imprisonment followed by five years of supervised release for the armed robbery of a letter carrier in violation of 18 U.S.C. § 2114(a). As conditions of his supervised release, the district court ordered Carter to participate in outpatient substance abuse treatment, to submit to drug and alcohol testing, to abstain from using illicit drugs and alcohol, and to abstain from abusing prescription drugs. Carter argues that the district court abused its discretion by requiring him to submit to drug and alcohol testing and to undergo substance abuse treatment when there was no evidence before the district court that Carter had a history of drug or alcohol abuse. We affirm.

## STATEMENT OF FACTS

On February 22, 1997, armed with a handgun, Carter robbed a mail carrier. Two days later, postal inspectors searched Carter's residence and discovered six State of California checks. The checks were not addressed to Carter or to the person with whom he shared the residence. On March 28, 1997, postal inspectors unsuccessfully attempted to arrest Carter, who had fled his residence. On March 31, 1997, Carter left a voicemail message for Postal Inspector Michael Delaney in which Carter admitted to possession of the checks, but denied that he robbed the mail carrier. Carter went on to state that "if you want me, you're going to get me dead, cause I cannot afford to go to jail the rest of my life." On May 15, 1997, postal inspectors arrested Carter. On the first day of trial, August 5, 1997, Carter pled guilty to robbing the mail carrier, but denied having committed an armed robbery. Thus, Carter went to trial on whether he violated 18 U.S.C. § 2114(a) by using a dangerous weapon. On August 6, 1997, a jury convicted Carter of that charge.

At sentencing, the district court adopted the recommendations of the probation officer, ordering that Carter be placed on supervised release for five years upon release from prison. Carter's supervised release was subject to the conditions that he "participate in outpatient substance abuse treatment and submit to drug and alcohol testing, ... abstain from using illicit drugs, alcohol, and abusing prescription medications during the period of supervision." The probation officer justified this recommendation "based on the past allegations of possible suicide by overdose," referring to a February 25, 1997, incident where Carter was taken to a hospital following a 9-1-1 call during which he stated that he had taken pills and that he no longer wanted to live. Carter later claimed that he did not attempt suicide, but rather had overdosed on his migraine medication because of the severity of his headaches. The probation officer also recommended psychological counseling.

In his sentencing position paper, Carter objected to the proposed terms of his supervised release. Carter argued that it was inappropriate for the district court to require him to undergo drug and alcohol treatment and testing upon release because he had no history of drug abuse, and because his crime was not drug or alcohol related. The district court rejected Carter's argument, stating that:

> I don't think it will be inappropriate. This defendant is far from being a stable person.... [Y]our argument is that he hadn't been caught at it. But it is an appropriate requirement that he submit to that testing and if he passes it, why so be it. It will be all for the good. If he doesn't, it will be helpful to him to give him encouragement to passing. So I will not delete that from the portion of the conditions of probation.

## DISCUSSION

■ This court reviews for abuse of discretion the conditions of supervised release imposed by a district court. *See United States v. Johnson*, 998 F.2d 696, 697 (9th Cir.1993). Because submission to drug testing is a *mandatory* condition of supervised release, and because alcohol testing, outpatient drug treatment, and abstention from abusing prescription drugs are discretionary conditions, the two categories will be addressed separately.

## I

### Drug Testing as a Condition of Supervised Release

■ The district court did not abuse its discretion in ordering Carter to submit to drug *testing* while on supervised release. Submission to drug testing is a *mandatory* and not a discretionary condition of supervised release. *See* 18 U.S.C. § 3583(d). Section 3583(d) provides, in pertinent part:

> The court *shall* order, as an explicit condition of supervised release, that the defendant ... not unlawfully possess a controlled substance.... The court *shall* also order, as an explicit condition of supervised release, that the defendant refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release on supervised release and

at least 2 periodic drug tests thereafter (as determined by the court) for use of a controlled substance.

*Id.* (emphasis added). Moreover, the district court *may*—but is not obligated to—"ameliorate[ ] or suspend[ ]" these drug possession and testing conditions "if the defendant's presentence report or other reliable sentencing information indicates a low risk of future substance abuse by the defendant." 18 U.S.C. § 3563(a)(5).

■ Carter argues that, because there was no evidence before the district court that he used drugs or that his conviction was drug related, the district court abused its discretion in requiring that he submit to drug tests as a condition of his supervised release. Nonetheless, because § 3583(d) mandates submission to drug tests, the district court properly imposed such testing as a condition of Carter's supervised release. Furthermore, the district court was not required to suspend the mandatory conditions of § 3583(d) because the evidence before the court did not support a finding that Carter was a low risk of future substance abuse.

## II

### Alcohol Testing, Participation in an Outpatient Drug Treatment Program, and Refraining from Abusing Prescription Drugs as Discretionary Conditions of Supervised Release

■ The district court, moreover, did not abuse its discretion by ordering Carter to submit to *alcohol testing* and *outpatient drug treatment,* and ordering that he abstain from abusing prescription drugs during the period of his supervised release. A district court may, in its discretion, order such conditions of supervised release pursuant to 18 U.S.C. § 3583(d) if the conditions:

(1) . . . reasonably relate[ ] to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);

(2) involve[ ] no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and

(3) [are] consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a);

any condition set forth as a discretionary condition of probation in section 3563(b)(1) through (b)(10) and (b)(12) through (b)(20), and any other condition it considers to be appropriate.

18 U.S.C. § 3583(d).

Participation in a drug treatment program and abstention from excessive alcohol use are expressly listed in Title 18, U.S.C. § 3563(b)(7) and (9) as discretionary conditions of supervised release.[1] The imposition of such conditions is within the sound discretion of the district court so long as they reasonably relate to the factors set forth in § 3553(a)(1) and (2)(B)-(D). The pertinent factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

. . .

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a).

■ Furthermore, the conditions of supervised release need not be related to each factor in § 3553(a) and "may be unrelated to one or more of the factors, so long as they are sufficiently related to the others." *Johnson,* 998 F.2d at 697.[2]

---

**1.** In addition, ordering that Carter abstain from abusing prescription medications, in light of his attempted suicide by overdose on migraine medication, is certainly "appropriate" under 18 U.S.C. § 3583(d). The district court did not abuse its discretion in imposing this condition because it is reasonably related to Carter's "history and characteristics," 18 U.S.C. § 3553(a)(1), and to his effective "correctional treatment," 18 U.S.C. § 3553(a)(2)(D).

**2.** In addition, United States Sentencing Guidelines § 5D1.3(d)(4) recommends that a court re-

Carter argues that, because he has no history of drug or alcohol abuse, requiring him to undergo drug treatment, to submit to alcohol testing, and to abstain from abusing prescription medications is not reasonably related to the sentencing purposes set forth in § 3553(a). There was, however, evidence before the district court that Carter had attempted suicide by overdosing on migraine medication. Moreover, the district court noted that Carter's behavior had been unstable.[3] The district court, therefore, could reasonably have concluded that requiring Carter to undergo drug treatment and abstain from alcohol and from abusing prescription medication would be beneficial both to Carter and to society.

Accordingly, the discretionary conditions of Carter's supervised release—outpatient drug treatment, and abstention from alcohol and from abusing prescription medicines—reasonably relate to § 3553(a)(2)'s goals of "protect[ing] the public from further crimes of the defendant" and "provid[ing] the defendant with . . . correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(C)-(D).

AFFIRMED.[4]

---

quire that a defendant submit to drug or alcohol testing as a condition of supervised release if "the court has reason to believe that the defendant is an abuser of narcotics, other controlled substances or alcohol. . . ."

3. As indicated, there was evidence before the court that Carter had attempted suicide on at least one occasion. In addition, Carter's counsel argued at the time of sentencing for a low end sentence on the grounds that Carter suffers from severe migraines and anxiety attacks.

4. In support of his argument that the conditions of his supervised release are not reasonably related to the goals of § 3553, Carter cites two Eighth Circuit cases—*United States v. Bass*, 121 F.3d 1218 (8th Cir.1997) and *United States v. Prendergast*, 979 F.2d 1289 (8th Cir.1992). In both *Bass* and *Prendergast*, the Eighth Circuit vacated conditions of supervised release ordering abstention from alcohol. Unlike Carter's situation, however, neither the defendant in *Bass* nor the defendant in *Prendergast* had displayed Carter's erratic behavior, and neither had attempted suicide by overdosing on prescription medications.